UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| IVY L. REEVES,                        Plaintiff, <br><br>      -v- <br><br> CITY OF YONKERS, <br><br>                          Defendant. |

No. 16-CV-2223 (KMK)

OPINION & ORDER

Appearances:

Ivy L. Reeves
Yonkers, NY
*Pro Se Plaintiff*

Hina Sherwani, Esq.
Gregory S. Spicer, Esq.
Matthew I. Gallagher, Esq.
Corporation Counsel for the City of Yonkers
Yonkers, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Ivy L. Reeves ("Plaintiff") brings this Action against the City of Yonkers (the "City" or "Defendant") pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112 et seq., alleging that she was "[t]erminated [from her job] while out for medical attention," (Compl. 3 (Dkt. No. 2)).[1] Specifically, Plaintiff claims that she was terminated after requesting sick leave because certain employees of Defendant assumed Plaintiff was "running for office and taking time off for campaigning." (*Id.* at 5.) Before the Court is Defendant's Motion To Dismiss

---

[1] Plaintiff's Complaint consists of the standard "Complaint for Employment Discrimination" form, along with two type-written pages of allegations and 27 pages of attachments. (*See generally* Compl.) Page numbers refer to the ECF-generated numbers in the upper right-hand corner of the page.

pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Dkt. No. 22.) For the reasons to follow, Defendant's Motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.

Plaintiff began working for Defendant on January 1, 2012 as an employee of Michael Sabatino, a member of the Yonkers City Council ("Councilman Sabatino"). (*See* Compl. 5.) Plaintiff avers that Councilman Sabatino told her that "he was under extreme pressure not to hire [Plaintiff] from the [D]emocratic [P]arty," and certain individuals who "did not want [Plaintiff] to have a job with the [C]ity." (*Id.*)

"Around 2012/2013[,] while working for the [C]ity of Yonkers[,] [Plaintiff] was hospitalize[d] with a gastric volvulus and was scheduled for surgery." (*Id.*) Plaintiff "returned to work after approximately a week with documentation." (*Id.*) In "April or May of 2015," following "three and one half years [at the City Council] and approximately [two] years as the office manager," the office became "short staffed and needed coverage for other person[nel] who had called out . . . on medical leave." (*Id.*) "[Councilman] Sabatino hired a temp[]," and on "June 1, 2015[,] when one of the full time staff members returned to work after a month . . . [of] medical leave," Plaintiff requested time off beginning June 2, 2015. (*Id.*)[2] For the two weeks leading up to her request for leave, Councilman Sabatino "would not speak to [Plaintiff]." (*Id.*)

---

[2] Plaintiff's Complaint erroneously states that she "put in [her] paper work for time [off] from June 2, 2016," rather than June 2, *2015*. (Compl. 5.)

2

Plaintiff's "nerves and heart were acting up due to the stress of what was happening at work" and she was experiencing joint inflammation and pain. (*Id.*)

Plaintiff had a doctor's appointment scheduled at 3:15 p.m. on June 2, 2015. (*Id.* at 6.) On the evening before the appointment, after Plaintiff had requested time off, Councilman Sabatino emailed Plaintiff that she "was expected to be at a meeting at 3 [p.m.] on June 2nd." (*Id.*) "To [Plaintiff's] knowledge[,] no office worker[] ha[d] ever been asked to return to work after requesting time off." (*Id.*) Plaintiff attended the doctor's appointment and "was given a note to not return to the office for [two] weeks . . . due to stress and tension of the hostile and toxic work environment." (*Id.*)

In a letter dated June 8, 2015 and appended to Plaintiff's Complaint, Councilman Sabatino informed Plaintiff that he was "denying [her] request" for compensatory time, because "it ha[d] become abundantly clear that [Plaintiff] intend[ed] to use this time for political and/or campaign purposes." (*Id.* at 7.) The letter informed Plaintiff that her "candidacy for Council . . . create[d] a direct conflict of interest . . . between [her] status as a candidate and [her] role as an employee in the Office of the Minority Leader." (*Id.*) Plaintiff was informed that she would be "terminate[d] . . . from [her] current position effective at the close of business on Tuesday, June 9, 2015." (*Id.*)

Plaintiff avers that she "was treated differently" from other staff members who had requested sick leave and that Councilman Sabatino "did not act on policy protocol[,] but instead on political dedication in regard[] to [Plaintiff's] termination." (*Id.* at 6.) Plaintiff requests $32,000 in back pay and $220,000 for "4 y[ea]rs estimate of service [and] . . . salary at the time." (*Id.* at 4.) In addition, Plaintiff seeks punitive damages and compensatory damages of $100,000 for "pain [and] suffering[,] . . . mental anguish[,] depression[, and] stress." (*Id.*)

3

B. Procedural History

Plaintiff filed the Complaint in this Action on March 23, 2016. (*See* Dkt. No. 2.)[3] Pursuant to a Scheduling Order issued on January 23, 2017, (*see* Dkt. No. 21), on February 21, 2017, Defendant filed the instant Motion To Dismiss and accompanying papers, (*see* Dkt. Nos. 22–25). On February 23, Plaintiff filed a letter to the Court requesting a settlement conference. (*See* Dkt. No. 26.) In a memo endorsement dated March 1, 2017, the Court informed Plaintiff that it would first decide the pending Motion. (*See* Dkt. No. 27.) On March 20, 2017, Plaintiff filed her opposition to Defendant's Motion. (*See* Dkt. No. 28.) On April 19, 2017, Defendant informed the Court that it would not be filing papers in reply. (*See* Dkt. No. 29.)

## II. Discussion

A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

---

[3] Plaintiff's request to proceed in forma pauperis was granted on April 4, 2016. (*See* Dkt. No. 3.)

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to [her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in [her] papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

In its Motion, Defendant contends that Plaintiff's Complaint must be dismissed because she failed to file the Action within 90 days of receipt of the Notice of Dismissal and Right to Sue Letter, and has no basis to invoke equitable tolling. (*See* Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 3–8 (Dkt. No. 24).)

Under Title VII and the ADA, a claim must be filed in federal court within 90 days of the plaintiff's receipt of a "Right to Sue Letter" from the Equal Employment Opportunity

6

Commission (the "EEOC"). *See* 42 U.S.C. § 2000e–5(f)(1); *see also Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 77 (2d Cir. 2003) (noting a plaintiff must "file[] a civil complaint within [90] days of receiving a right-to-sue letter, as required by 42 U.S.C. §§ 2000e–5(f)(1) and 12117(a)"). "This [90]-day filing requirement also functions as a statute of limitations," *Williams v. Wellness Med. Care, P.C.*, No. 11-CV-5566, 2013 WL 5420985, at *4 (S.D.N.Y. Sept. 27, 2013), and "is subject to the doctrine of equitable tolling," *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010); *see also Vollinger v. Merrill Lynch & Co., Inc.*, 198 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) ("[T]he [90]-day filing requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling.").

Defendant asserts that the EEOC sent Plaintiff the Right to Sue Letter on December 16, 2015, (*see* Def.'s Mem. 3), and Plaintiff admits that she received the Letter on December 19, 2015, (*see* Compl. 4; Pl.'s Mem. 4 (Dkt. No. 28)). Accordingly, Plaintiff had 90 days from December 19, 2015 to file her Complaint. Her Action, filed on March 23, 2016, is thus untimely by five days unless the doctrine of equitable tolling applies.

"Equitable tolling is an extraordinary remedy," *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004), one that "is only appropriate in rare and exceptional circumstances," *Zerilli-Edelglass*, 333 F.3d at 80 (alterations and internal quotation marks omitted); *see also Upadhyay v. Sethi*, No. 10-CV-8462, 2012 WL 3100601, at *1 (S.D.N.Y. July 31, 2012) (explaining that "equitable tolling . . . . is an extraordinary remedy to be used only sparingly"). A litigant seeking equitable tolling bears the burden of establishing "(1) that [she] has been pursuing [her] rights diligently; and (2) that some extraordinary circumstances stood in [her] way and prevented timely filing." *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010)

7

(internal quotation marks omitted); *see also Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) ("The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.").

In its Motion, Defendant contends that Plaintiff "blames her attorney," and that "Plaintiff has not set forth any facts or argument indicating that the time limit should be extended." (Def.'s Mem. 6–7.) Plaintiff asserts that she "called, texted[,] and emailed [her attorney] and got no response" and thus was forced to proceed pro se. (Compl. 6.)

It is well established that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see also Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 577–78 (E.D.N.Y. 2011) (same). In the past, the Supreme Court has held that in the context of procedural default, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the [litigant's] agent when acting, or failing to act, in furtherance of the litigation, and the [litigant] must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). However, in *Holland v. Florida*, the Supreme Court found such a rule was "difficult to reconcile with more general equitable principles in that it fails to recognize that, at least sometimes, professional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." 560 U.S. 631, 651 (2010).

Defendant argues that "it was only with less than one month remaining prior to the 90 day tolling date that Plaintiff began to text and email her attorney." (Def.'s Mem. 6.) The Court disagrees with Defendant's characterizations of Plaintiff's communications with her counsel.

Attached to Plaintiff's Complaint are emails to her former counsel, Richard St. Paul, Esq., dated March 2, 2016, referencing text messages to Mr. St. Paul on February 12, 2016, six weeks before the expiration of the 90-day filing period. (*See* Compl. 31–33.) In an email sent on March 2, 2016, Mr. St. Paul informed Plaintiff that he was "in the process of drafting [Plaintiff's] [C]omplaint," and that he intended to send it to Plaintiff "for review once [he was] done." (*Id.* at 32.) Thus, less than three weeks before her filing deadline, Plaintiff was under the impression that Mr. St. Paul was preparing her Complaint.

However, in addition to the Complaint and documents appended thereto, the Court also considers "documents that a pro se litigant attaches to [her] opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), as well as "factual allegations made by a pro se party in . . . papers opposing the motion, *Walker*, 717 F.3d at 122 n.1 (italics omitted). In her opposition to Defendant's Motion, Plaintiff asserts that she "retained [Mr. St. Paul] approximately [eight] months prior to the EEOC deadline," (Pl.'s Mem. 2), and details several exchanges via text message and phone in which she attempted to contact Mr. St. Paul to discuss her case, (*see id.* at 3–4). These communications began shortly after Plaintiff received the Right to Sue Letter. (*See id.*)[4] For example, attached to Plaintiff's opposition is an email Plaintiff sent to Mr. St. Paul on January 11, 2016, providing additional information about her case and offering to meet with him. (*See* Pl.'s Mem. Ex. 15, at 2.) Plaintiff also has attached a letter from Mr. St. Paul to Councilman Sabatino. (*See* Pl.'s Mem. Ex. 11 ("St. Paul Letter").) Although the Court is unable to discern when (or even whether) the letter was sent, as it is undated and unsigned, it states that "this law firm has been retained by Ms. Ivy Reeves with respect to . . . the termination of her

---

[4] As early as January 20, 2016, Plaintiff allegedly expressed concern that she had "less than 60 days" to file a complaint. (Pl.'s Mem. 3.)

employment on or about June 9, 2015." (*Id.* at 1.)[5]  The letter—which is three pages long—goes on to state that "it is [the firm's] hope and expectation that you[] will attend seriously to this offer to resolve Ms. Reeves' claims here." (*Id.* at 2.)  The letter is drafted on Mr. St. Paul's letterhead and contains his typewritten name at the bottom.  (*Id.* at 1, 3.)  Finally, Plaintiff has attached an email to Mr. St. Paul, dated March 11, 2016, in which Plaintiff explains that she spoke with Mr. St. Paul's assistant in connection with her case, but had still not received a timely response.  (*See* Pl.'s Mem. Ex. 2.)

Here, the "egregious behavior" of Mr. St. Paul "create[d] an extraordinary circumstance that warrants equitable tolling," *Holland*, 560 U.S. at 651, as this "extraordinary circumstance impeded [Plaintiff's] timely filing because [Mr. St. Paul] effectively abandoned his client," *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) (internal quotation marks omitted).  At least up until March 2, 2016, Mr. St. Paul made statements to Plaintiff causing her to assume that approximately two and one-half weeks before her deadline, he was "in the process of drafting [her] [C]omplaint." (*See* Compl. 32; Pl.'s Mem. Ex. 13, at 3.)  Indeed, even on March 9, 2016, Plaintiff asserts that she was informed that Mr. St. Paul still intended to schedule a meeting with her the following week. (*See* Pl.'s Mem. Ex. 2.)

However, the finding of "extraordinary circumstances" does not end the inquiry.  In order to reap the benefits of equitable tolling, Plaintiff must also establish that she "act[ed] as diligently as reasonably could have been expected *under the circumstances*." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original).  In *Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004), the Second Circuit identified four factors relevant to a diligence inquiry

---

[5] The Court notes that the letter could be that referenced in an email Plaintiff sent to Mr. St. Paul on March 2, 2016, in which Plaintiff writes, "[s]o far only one letter went out this past summer." (*See* Compl. 31.)

"[i]n the attorney incompetence context": (1) "the purpose for which the [plaintiff] retained the lawyer," (2) "h[er] ability to evaluate the lawyer's performance," (3) "h[er] financial and logistical ability to consult other lawyers or obtain new representation," and (4) "h[er] ability to comprehend legal materials and file the [pleadings] on h[er] own." *Id.* at 175.

The first factor weighs in favor of Plaintiff. It is clear from the briefing that Plaintiff retained Mr. St. Paul in connection with legal action in response to her termination. Indeed, Mr. St. Paul dedicated at least some effort to assisting Plaintiff in that manner and at one point had intentions of pursuing her case. (*See* St. Paul Letter.) As to the second factor, while it should have been clear to Plaintiff in January and February of 2016 that Mr. St. Paul was unresponsive and unreliable, counsel's indication in March 2, 2016 that he was "in the process of drafting [her] [C]omplaint," (*see* Compl. 32; Pl.'s Mem. Ex. 13, at 3), would have reasonably dissuaded Plaintiff from starting her search for representation anew, *cf. Martinez*, 806 F.3d at 32 (finding "the district court should have considered whether [counsel's] written misrepresentations reasonably could have impeded and delayed [the petitioner's] ability to evaluate his lawyer's performance at the time that it mattered and without the benefit of hindsight").

With respect to the third *Doe* factor, Plaintiff's allegations make clear that she did not have "the financial ability to easily obtain another lawyer, even if [s]he had realized that h[er] counsel had abandoned h[er]." *Id.* In various emails to Mr. St. Paul, Plaintiff alerted him that she was concerned about her ability to pay for additional representation. (*See* Compl. 31 ("I am still without a job and have given you all that I have. So far only one letter went out this past summer."); *id.* at 33 ("I'm out of both time and money in 5 DAYS!!"); Pl.'s Mem. Ex. 15, at 2 ("I'm all out of [money].").) Plaintiff asserts that she "turn[ed] over thousands of dollars in cash" to her counsel, (Pl.'s Mem. 5), and states in an email to Mr. St. Paul that he "received a

11

'cash' retainer" of $2,500, that she was told "would cover [her] to the end of the case," (Compl. 31).

Finally, the Court addresses Plaintiff's "ability to comprehend legal materials and file the [pleadings] on h[er] own." *Doe*, 391 F.3d at 175. Plaintiff has demonstrated her ability to present the case herself through submissions in this Action that adequately express her arguments and desired forms of relief. However, the Court notes that Plaintiff did not intend to undertake that task until March 9, 2016, when she "realized [she] was on [her] own." (Pl.'s Mem. 4.) Plaintiff then endeavored to find new counsel, but was unsuccessful, (*see id.*), and on March 14, 2016, less than one week before the deadline, Plaintiff received "papers from the Pro Se Intake Unit" and had to "start over without legal advice," (*id.* at 5).

The Court finds that such actions indicate diligence of the part of Plaintiff. And while there are "significant gaps [of time which] also indicate that [Plaintiff] may have been inactive," *Martinez*, 806 F.3d at 34, Plaintiff need only justify the tolling of the 90-day period for five days in order to make her Complaint timely. The Court finds that Plaintiff has sufficiently established the appropriateness of tolling for this amount of time.

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is denied. The Court will hold a status conference on June 27, 2017 at 10:30 a.m.

The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 22.)

SO ORDERED.

DATED: May 24, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE